**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000505**
**18-JUN-2013**
**08:30 AM**

NO. CAAP-12-0000505

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Plaintiff-Appellant,
v.
LINDA LINGLE, GOVERNOR, STATE OF HAWAI'I;
LINDA SMITH, CHIEF POLICY ADVISER TO LINDA LINGLE,
STATE OF HAWAI'I; GEORGIANA KAWAMURA, DIRECTOR,
DEPARTMENT OF BUDGET AND FINANCE, STATE OF HAWAI'I;
MARIE LADERTA, DIRECTOR, DEPARTMENT OF HUMAN RESOURCES
DEVELOPMENT, STATE OF HAWAI'I; CLAYTON FRANK, DIRECTOR,
DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAI'I;
STATE OF HAWAI'I; AND DOE DEFENDANTS 1-10 (2009-045),
Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-2145-09 PWB)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Plaintiff-Appellant United Public Workers, AFSCME,
Local 646, AFL-CIO (UPW) appeals from the May 15, 2012 "Order
Granting Defendants' Second Motion To Dismiss Plaintiff's
Complaint Filed September 16, 2009" (Order) and the May 15, 2012
Final Judgment entered in the Circuit Court of the First Circuit[1]
(circuit court) in favor of Defendants-Appellees Linda Lingle,
Governor, State of Hawai'i; Linda Smith, Chief Policy Adviser

---

[1] The Honorable Patrick W. Border was assigned to this case from
January 11, 2010 and presided over the portion of the proceedings on appeal.

to Linda Lingle, State Of Hawai'i; Georgina Kawamura, Director, Department of Budget and Finance, State of Hawai'i; Marie Laderta, Director, Department of Human Resources Development, State of Hawai'i; Clayton Frank, Director, Department of Public Safety, State of Hawai'i; State of Hawai'i (collectively, State Defendants).

## I.  BACKGROUND

UPW is the bargaining representative of employees in bargaining units 1 and 10.  In June 2009, UPW and the Hawai'i State Teacher Association filed civil complaints in the circuit court, on the unions' behalf and on behalf of the bargaining unit employees they represent, challenging then-Governor Linda Lingle's decision to furlough all state employees (furlough suit).  On September 16, 2009, UPW filed the instant complaint, alleging the State Defendants had threatened and implemented mass layoffs and privatization efforts not out of economic necessity but rather in retaliation against UPW and its members for filing the furlough suit.  Around the same time, UPW also filed (1) a prohibited practice complaint with the Hawai'i Labor Relations Board (HLRB) and (2) individual and class grievances, challenging the layoffs and privatization efforts.

On September 27, 2011, the State Defendants filed in the circuit court a motion to dismiss UPW's complaint for lack of subject matter jurisdiction.  The State Defendants argued for dismissal based on Hawai'i Gov't Employees Ass'n, AFSCME Local 152, AFL-CIO v. Lingle (HGEA), 124 Hawai'i 197, 239 P.3d 1 (2010) and Hawai'i State Teachers Ass'n v. Abercrombie (HSTA), 126 Hawai'i 318, 271 P.3d 613 (2012).  On May 15, 2012, the circuit court entered its Order concluding:

> [T]he underlying facts and allegations set forth in the
> instant complaint mirror those alleged by UPW in its case
> before the HLRB as constituting alleged prohibited
> practices. [Hawaii Revised Statutes (HRS)] Section 89-14
> [(2012 Repl.)] provides that the HLRB shall have exclusive,
> original jurisdiction over controversies implicating
> prohibited practices, and it would be wholly inconsistent
> with the HLRB's exclusive, original jurisdiction for this
> Court to hear the same underlying factual disputes and
> allegations and create the possibility of inconsistent

2

judgments. On the contrary, the Court finds that the statutory scheme mandates that those facts, allegations and claims raised by UPW in its prohibited practice complaint be heard to conclusion by the HLRB first and subject to judicial review by a court of competent jurisdiction operating in its appellate capacity.

The circuit court's Order dismissed without prejudice[2] all claims for lack of subject matter jurisdiction. On May 16, 2012, the circuit court entered its Final Judgment in favor of the State Defendants.

UPW filed a timely notice of appeal on May 21, 2012. On appeal, UPW contends the circuit court erred in concluding the complaint's claims lay within the HLRB's exclusive original jurisdiction and in concluding the pending HLRB jurisdiction divested the circuit court of jurisdiction.

## II. STANDARD OF REVIEW

The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

Lingle v. Hawaiʻi Gov't Employees Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 158-59, 977 P.2d 160, 166-67 (1999)).

---

[2] Contrary to UPW's arguments, it is clear the circuit court dismissed the case without prejudice, although its Order and Final Judgment did not explicitly state so. A dismissal with prejudice is "an adjudication on the merits of all the issues that were raised or could have been raised in the pleadings." Standard Mgmt., Inc. v. Kekona, 99 Hawaiʻi 125, 136, 53 P.3d 264, 275 (App. 2001) (internal brackets and quotation marks omitted, emphasis added). Hawaiʻi Rules of Civil Procedure Rule 41(b)(3) ("Involuntary dismissal: Effect thereof") states, in relevant part: "[A] dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, . . . operates as an adjudication upon the merits." (Emphasis added.) Here, the circuit court's order specified it dismissed all claims for lack of jurisdiction. Therefore, the dismissal was not an adjudication upon the merits and was without prejudice.

### III. DISCUSSION

Hawaii Revised Statutes (HRS) § 89-14 states: "Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377-9; provided that the board shall have exclusive original jurisdiction over such a controversy[.]" (Emphasis added.) The existence of an interrelated constitutional issue does not automatically remove the controversy from the HLRB's primary consideration if the complaint essentially presents a "controversy concerning prohibited practices." HSTA, 126 Hawai'i at 322, 271 P.3d at 617. We conclude this case raises issues within the HLRB's exclusive jurisdiction over prohibited practice controversies. Therefore, although UPW's statutory claims could be raised directly in the circuit court, the matter should be referred to the HLRB under the doctrine of primary jurisdiction. We further conclude that a stay, rather than dismissal without prejudice, was appropriate under the circumstances presented here, and the circuit court erred in dismissing the action. See Pavsek v. Sandvold, 127 Hawai'i 390, 402, 279 P.3d 55, 67 (App. 2012).

Counts I and II of UPW's complaint alleged the State Defendants violated the Hawai'i Whistleblowers' Protection Act[3]

---

[3]   HRS § 378-62 (Supp. 2012) states, in relevant part:

**§ 378-62. Discharge of, threats to, or discrimination against employee for reporting violations of law.** An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> > (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]

and article I, section 4 of the Hawaiʻi Constitution[4] by threatening and implementing layoffs. Counts III and IV alleged the State Defendants violated constitutionally mandated merit principles[5] and civil service statutes[6] by privatizing or otherwise contracting out services performed by employees of bargaining units 1 and 10 under the merit system.

In HSTA and HGEA, the supreme court noted the legislative purpose of having the administrative agency with expertise decide the predicate issues is frustrated if plaintiffs could simply recast HRS Chapter 89 complaints and thereby address them directly to the circuit court. HSTA, 126 Hawaiʻi at 322,

---

[4] Article I, section 4 of the Hawaiʻi Constitution states:

FREEDOM OF RELIGION, SPEECH, PRESS, ASSEMBLY AND PETITION

**Section 4.** No law shall be enacted respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

[5] Article XVI, section 1 of the Hawaiʻi Constitution states:

CIVIL SERVICE

**Section 1.** The employment of persons in the civil service, as defined by law, of or under the State, shall be governed by the merit principle.   ·

[6] HRS § 76-16 (2012 Repl.) states, in relevant part:

**§ 76-16. Civil service and exemptions.**

.   .   .

(b) The civil service to which this chapter applies shall comprise all positions in the State now existing or hereafter established and embrace all personal services performed for the State, except the following:

.   .   .

(2) Positions filled by persons employed by contract where the director of human resources development has certified that the service is special or unique or is essential to the public interest and that, because of circumstances surrounding its fulfillment, personnel to perform the service cannot be obtained through normal civil service recruitment procedures. Any such contract may be for any period not exceeding one year[.]

UPW's complaint alleged the services the State Defendants privatized or contracted out did not fall within HRS § 76-16(b)(2)'s exemption.

271 P.3d at 617; HGEA, 124 Hawai'i at 208, 239 P.3d at 12. Here, as in HSTA, although the UPW's complaint did not expressly assert an HRS Chapter 89 claim, the controversy presented to the circuit court was identical to the issues that were raised or should have been raised in UPW's prohibited practice complaint to the HLRB. HRS § 89-13(a) (2012 Repl.) defines the term prohibited practice as follows:

**§89-13 Prohibited practices; evidence of bad faith.** (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:

    (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

    . . .

    (3) Discriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization;

    (4) Discharge or otherwise discriminate against an employee because the employee has signed or filed an affidavit, petition, or complaint or given any information or testimony under this chapter, or because the employee has informed, joined, or chosen to be represented by any employee organization;

    (5) Refuse to bargain collectively in good faith with the exclusive representative as required in section 89-9[.]

Id.

The complaint raised the following allegations in support of the claims:

53. On July 17, 2009 Defendants notified various public employees that their names would be included on layoff lists, and on July 20, 2009 Defendant Laderta provided a list to UPW of approximately 123 bargaining unit 1 employees, and 93 bargaining unit 10 employees for impending layoffs.

54. On July 22, 2009 UPW requested that Defendant Laderta negotiate over the impending layoff criteria and procedure under Section 76-43, HRS, and Section 89-9 (a), HRS, and to cease and desist from unilaterally implementing layoffs pending compliance with the duty to bargain over wages, hours, and other conditions of employment.

55. On July 23, 2009 Defendant Frank notified the UPW of an impending layoff due to the closure of the Kulani Correctional Facility on or about October 26, 2009. Although civil servants would be subject to layoff, no similar action would be taken with respect to employees

performing the substantial amount of corrections work that has been privatized by the Department of Public Safety.

56. On July 29, 2009 the UPW requested that Defendant Frank negotiate over the decision to close the Kulani Correctional Facility, and requested Defendants to cease and desist from retaliating against employees represented by UPW for challenging Defendant Lingle's decision of June 1, 2009 to furlough state employees for three days each month for the next two years.

. . .

63. Defendants' decision to repeatedly threaten and to implement mass layoffs of bargaining unit 1 and 10 employees were made to retaliate against UPW and its members for exercising their right to report and challenge illegal government conduct by filing and pursuing a lawsuit in the circuit court against Defendants' unconstitutional furlough plan, and to engage in collective bargaining over furloughs.

64. Other public employers covered by the unit 1 and 10 agreements have not implemented layoffs, reductions in force, discharges, or engaged in such discriminatory and adverse actions which have been undertaken by Defendants.

65. Employees of the State of Hawaii who are excluded from collective bargaining have not been notified of mass layoffs in the same manner as implemented against employees represented by UPW (or other unions) who challenged Lingle's furlough plan.

. . .

68. All persons employed in unit 1 and 10 positions within the Department of Public Safety, State of Hawaii, have historically and customarily been recruited, hired, retained, assigned, and employed in accordance with the merit principles mandated by Article XVI, Section 1 of the Hawaii State Constitution and HRS Chapters 76 and 77.

69. Civil servants of the State of Hawaii in units 1 and 10 have also historically and customarily been responsible for corrections work for inmates incarcerated by the State of Hawaii. The contracting out and privatization of corrections work by Defendants cannot be justified when there are public employees available to perform such work who are being subject to layoffs, reductions in force, discrimination and other adverse actions.

70. Defendants' decision to lay-off public employees in the Department of Public Safety, State of Hawaii, while maintaining thousands of inmates in facilities on the mainland, staffed by private-sector workers, discriminates against civil servants and contravenes the merit principles mandated by Article XVI, Section 1 of the Hawaii State Constitution and HRS Chapters 76 and 77.

. . .

102. Defendants violated the rights of employees under Section 76-43, HRS, by refusing to negotiate the criteria, procedures, timing, and manner of handling mass layoffs for reasons other than "lack of work" or lack of "funds" with UPW prior to unilateral implementation of the layoffs,

reductions in force, and discharges of unit 1 and 10 employees.

103. Defendants, by the foregoing acts, have abrogated the Civil Service Laws of the State of Hawaii.

In summary, UPW's challenges to the legality of the State Defendants' layoffs and privatization efforts were based on allegations that the State Defendants discriminated against UPW members by laying off employees of bargaining units 1 and 10 in retaliation for engaging in protected union activities and filing the furlough suit, discriminated against UPW members by failing to take corrective action to terminate current private contractors while implementing the layoff of UPW members, and refused to bargain collectively regarding the layoff procedures and the privatization.

HRS § 89-13(a) specifically defines all of the above alleged actions as prohibited practices. We therefore disagree with UPW's assertion that its complaint alleged separate violations of law that were "entirely independent" of HRS Chapter 89 and the prohibited practice controversy. Viewing the complaint's assertions in light of HRS § 89-13(a), it appears UPW alleged the State Defendants essentially engaged in prohibited practices by implementing the layoffs and privatization. See HSTA, 126 Hawai'i at 322, 271 P.3d at 617; HGEA, 124 Hawai'i at 205, 239 P.3d at 9. HGEA and HSTA reflect a concern that, when a plaintiff presents to the circuit court a controversy that is identical to one which could have and should have been presented to the HLRB, the circuit court's exercise of jurisdiction necessarily involves a risk of interfering with the HLRB's exclusive jurisdiction over prohibited practice controversies.

However, UPW correctly asserts its statutory claims could be raised directly in the circuit court. See Konno v. Cnty. of Hawai'i, 85 Hawai'i 61, 937 P.2d 397 (1997) (discussing claim for violation of HRS § 76-77 (2012 Repl.)); HRS § 378-63 (Supp. 2012). When a court and an agency have concurrent

original jurisdiction to decide issues which have been placed within the special competence of an administrative agency, the primary jurisdiction doctrine applies and a court should refer the issues to the agency before proceeding. Fratinardo v. Employees' Ret. Sys. of State of Hawai'i, 121 Hawai'i 462, 468, 220 P.3d 1043, 1049 (App. 2009). Where the doctrine of primary jurisdiction applies, however, "dismissal is an appropriate remedy only if the parties would not be unfairly disadvantaged." Jou v. Nat'l Interstate Ins. Co. of Hawaii, 114 Hawai'i 122, 129, 157 P.3d 561, 568 (App. 2007) (emphasis added).

In this case, UPW argues dismissal was inappropriate because the statute of limitations may prevent it from refiling its claims if necessary at the conclusion of the HLRB proceedings, and we agree.[7] See Id. at 128, 157 P.3d at 567 (a stay "avoids the danger that the statute of limitations on the [court] claim may run before the administrative agency decides the predicate issues"). Accordingly, we conclude the circuit court erred in dismissing the case, and not staying the proceedings pending the outcome of the administrative process.[8]

## IV. CONCLUSION

For the foregoing reasons, we vacate the May 15, 2012 "Order Granting Defendants' Second Motion To Dismiss Plaintiff's Complaint Filed September 16, 2009" and the May 15, 2012 Final Judgment entered in the Circuit Court of the First Circuit, and we remand with instructions to stay the action pursuant to the primary jurisdiction doctrine so that the parties may pursue

---

[7] HRS § 378-63(a) sets forth the statute of limitations for alleged violations of the Hawai'i Whistleblowers' Protection Act and states: "A person who alleges a violation of this part may bring a civil action for appropriate injunctive relief, or actual damages, or both within two years after the occurrence of the alleged violation of this part."

[8] Cf. HGEA, 124 Hawai'i at 210 n.22, 239 P.3d at 14 n.22 (declining to decide whether upon remand the circuit court should dismiss or stay because the issue was not argued on appeal); see also, e.g., TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1243-44 (10th Cir. 2007) (vacating dismissal and remanding with order to stay because of two-year statute of limitations).

appropriate administrative remedies before the Hawai'i Labor Relations Board.

DATED:  Honolulu, Hawai'i, June 18, 2013.

On the briefs:

Herbert R. Takahashi
Rebecca L. Covert
Davina W. Kam
(Takahashi and Covert)
for Plaintiff-Appellant.

James E. Halvorson
Richard H. Thomason
Deputy Attorneys General
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

10